Joseph and Kathleen **CLANCY,**
Appellants,

v.

Nathan M. **GOLDBERG,** Trustee in Bankruptcy for Solar Additions, Inc., Appellee.

No. 94–CV–820.

United States District Court,
N.D. New York.

July 6, 1995.

---

The Proskin Law Firm (John P. Miller, of counsel), Albany, NY, for appellants.

Goldberg & Gottheim (Nathan M. Goldberg, of counsel), Albany, NY, for appellee.

**674**

## MEMORANDUM, DECISION & ORDER

McAVOY, *Chief Judge.*

### I. BACKGROUND

During August 1993, appellants Joseph and Kathleen Clancy entered into a contract with Solar Additions, Inc. ("Solar Additions") for the purchase and installation of a solar room addition to their residence in Clifton Park, New York. In furtherance of the contract, appellants paid Solar Additions $17,784.46 over a period from August through October 1993. The appellants, however, never received the solar room for which they contracted.

From August through November 1993, Solar Additions was operating under Chapter 11 of the Bankruptcy Act. In November 1993, the Chapter 11 status was converted to a Chapter 7 liquidation. Upon conversion, a Trustee was appointed to represent appellee Solar Additions. The Trustee took possession of Solar Additions' bank accounts, including the general operating account which contained $6,713.13. Numerous claims for deposits against such funds have substantially exceeded this amount.[1]

On November 29, 1993, appellants filed a proof of claim against Solar Additions asserting that the $17,784.46 they had paid was not part of the bankrupt's estate. Prior to appellants' service and filing, another deposit creditor commenced the same action on the same grounds and was joined by other deposit creditors. On January 12, 1994, appellants filed and served a summons and complaint against appellee as Trustee for the bankrupt seeking, *inter alia,* an order directing the appellee to pay $17,784.46 to appellants. Appellee filed and served an answer to the complaint on or about January 26, 1994. On March 10, 1994, appellants moved for summary judgment in Bankruptcy Court. The motion was heard on April 25, 1994 and the motion was denied and their complaint dismissed in an order by Bankruptcy Judge Justin J. Mahoney dated May 9, 1994. Appellants now appeal the May 9, 1994 order in this court. Notably, the Bankruptcy Court

ruled in favor of the Trustee in regard to the other deposit creditors who had filed against the bankrupt's estate concluding that all creditors in the same class should be treated equally.

### II. ANALYSIS

#### A. Standard of Review

 The standard for reviewing the decision of the Bankruptcy Court is set forth in Bankruptcy Rule 8013 which states that:

> [o]n an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

In short, a bankruptcy court's findings of fact may not be overturned unless clearly erroneous, while its conclusions of law are reviewed *de novo. Dill v. Dime Savings Bank, FSB (In re Dill),* 163 B.R. 221, 224 (E.D.N.Y. 1994). However, the district court is not bound by the clearly erroneous standard when reviewing a bankruptcy court's application of legal standards to facts reasonably found, but rather is free to reach its own conclusions of law. *In re Penn–Dixie Indus., Inc.,* 9 B.R. 936, 938 (S.D.N.Y.1981).

#### B. Issues on Appeal

Appellants here seek an order from the court reversing the May 9, 1994 Bankruptcy Court order, granting summary judgment in their favor, and directing the Trustee to return all monies they paid to Solar Additions. Appellants present five issues on appeal:

1. Whether Solar Additions was required to conduct its business in accord with the laws of New York while operating under Chapter 11 of the Bankruptcy Act?

2. Whether the solar room paid for by appellants was a home improvement under New York's General Business Law?

---

1. It appears that a number of people like the Clancys have paid deposits for construction that was never undertaken.

3. Whether the monies paid by appellants to Solar Additions were subject to § 71–a of New York Lien Law and accordingly required to be held in escrow for appellants at all relevant times?

4. Whether the funds paid by appellants became part of a trust held by Solar Additions thus requiring recovery of those funds be dependant on proof of a trust *res* and other tracing requirements?

5. Whether the Bankruptcy Act and/or 28 U.S.C. § 959(b) or other federal law requires the Bankruptcy Court to order the money in question, held by the Trustee, to be returned to appellants?

The Trustee presents three additional issues for determination:

6. Whether the Bankruptcy Act supersedes state statutes with respect to the priority of distribution?

7. Whether deposits and pre-payments made to a debtor in the operation of its business which are deposited into debtor's bank account and co-mingled with other funds of the debtor and deposits of other customers retain their character as trust funds notwithstanding § 71–a of New York Lien Law?

8. If such funds retain their character as trust funds, do they gain any priority over similar deposits or prepayments by virtue of appellants' commencement of this proceeding or are they subject to the general principles of the Bankruptcy Act to share equally with other deposits of a similar nature?

The Trustee maintains that the Bankruptcy Act supersedes state law with respect to priority on distribution of assets coming into possession of the Trustee and maintains that such priority should be determined by the class of the creditor rather than by a "race to the courthouse."

### 1. Conduct of Business Under Chapter 11

■ 28 U.S.C. § 959(b) states, in pertinent part, that:

Except as provided in section 1166 of title 11, a trustee ... appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

Thus, it is clear that while the bankrupt's estate was under Chapter 11, the debtor in possession was required to follow all the laws of New York pertinent to running the business.[2] The appellee does not refute appellants' argument on this issue.

### 2. Home Improvement

■ Under the definitions of "home improvement" and "home improvement contract" found respectively at §§ 770(3) and 770(6) of New York General Business Law, it is clear that the appellants' contract with Solar Additions for the addition of a solar room to their house was a contract for home improvement. The appellee does not refute appellants' argument on this issue.

### 3. New York Lien Law § 71–a

■ The applicability of New York Lien Law § 71–a to home improvement contracts is witnessed by the requirement of General Business Law § 771(1)(e) that the provisions of such contracts contain a notice to the owner purchasing the home improvement that, generally, a contractor is required to deposit all payments received prior to completion of the project in accordance with § 71–a of the Lien Law, or that "in lieu of such deposit, the home improvement contractor may post a bond, contract of indemnity or irrevocable letter of credit with the owner guaranteeing the return or proper application of such payments to the purposes of the contract." N.Y.Gen.Bus.Law § 771(1)(e) (McKinney 1995 Supp.).

Lien Law § 71–a requires that advances made in regard to home improvement con-

2. As stated previously, the current Trustee was not appointed to this case until it was converted to Chapter 7 status.

tracts be held in an escrow account in a bank, trust company, savings bank, or state or federal savings and loan association located in New York State. N.Y. Lien Law § 71–a(4)(a) (McKinney 1993). This money remains the property of the home owner until the home improvement contractor substantially performs under the terms of the contract, the home owner defaults or breaches the contract, thus excusing performance by the contractor, or the contractor applies the money to the purpose of the home improvement contract under the schedule of payments provided therein. N.Y. Lien Law. § 71–a(4)(d) (McKinney 1993). The contractor is not required to keep the deposits of customers in separate accounts, but may mix the funds so long as the contractor's records clearly keep track of the allocation of each customer's funds. N.Y. Lien Law § 71–a(4)(a) (McKinney 1993). There is no assertion that the appellants defaulted or breached the contract, or that the contractor applied the funds toward the purpose of the contract. It is clear that the contractor never substantially performed the contract. Thus, according to New York Lien Law, the money remained at all times in escrow for appellants.

■ There appears to be no question, and appellee does not refute the argument, that § 71–a of New York Lien Law was applicable to appellants' advances under the home improvement contract with appellee and that this was not changed by the fact that appellee was in bankruptcy at the time the contract was made.[3]

### 4. Whether Deposited Funds Became Part of a Trust

■ The plain language of Lien Law § 71–a shows that funds advanced by the home owner to the contractor on a home improvement contract must be held in escrow. N.Y. Lien Law § 71–a(4) (McKinney 1993). When money is deposited in escrow, ownership of that money remains in the depositor of the funds until the conditions of the agreement are fulfilled. *Press v. Marva-*

lan Indus., Inc., 422 F.Supp. 346, 349 (S.D.N.Y.1976); see generally 55 N.Y.Jur.2d Escrow § 9 (1986) (stating that "full legal title does not pass upon the delivery of a deed or other instrument to the depositary in escrow since title cannot pass prior to the occurrence of the contingency or the performance of the condition of the escrow ... pending full performance of the conditions, the legal title remains in the grantor"). The grantee, here the contractor, holds an equitable interest in the escrow funds which becomes full title only upon the performance of the conditions of the escrow agreement. 55 N.Y.Jur.2d Escrow § 9 (1986). As appellants point out, Solar Additions was the supplier of both labor and materials and held an equitable interest in the deposited funds only to the extent that such labor and materials were supplied. However, in this case no labor or materials were supplied and so full title remained in the appellants. Appellee does not refute this.

Since under New York law, these funds were clearly to be held in escrow rather than placed in a trust arrangement, recovery of these funds is not dependent on proof of a trust *res* or other tracing requirements necessary when funds have been placed in a trust arrangement. The finding by the court that the funds were to be held in escrow belies any assertion in the issues presented by the appellee that the funds in question are trust funds; they simply are not, and so, the court finds it unnecessary to address the second and third issues presented by the Trustee regarding the character of trust funds.

### 5. Applicability of the Bankruptcy Act

■ 11 U.S.C. § 541(a)(1) provides that the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Here, because the funds deposited by the Clancys were to be held in escrow by law, and because of the aforementioned facts of this case, the debtor had neither a legal nor an equitable interest, and so the funds are not part of the bankruptcy estate. Because

**3.** According to appellants, the contract was not in the form required under the General Business Law of New York, however, it was subject to the

substantive and procedural requirements of state law. The appellee does not refute this.

of this, the court finds that the Bankruptcy Act is inapplicable to these funds. As for tracing requirements, the Bankruptcy Court noted at oral argument that the Clancys would have to show that they paid the alleged funds to the debtor in order to recover, and this court obviously agrees that this is necessary to prove the validity of their claim to any funds. Additionally, there appear to be other persons similarly situated who have paid deposits to be held in escrow, and there are clearly very limited funds available to pay any of these claims. However, the court will not address the issue of how these individuals or the Clancys are to be reimbursed. Based on the evidence presented, the status of these claims is unclear and the court will not attempt to rule on how the priority or disbursement of any money to these individuals should be handled. The court simply holds that the funds in question are not part of the bankruptcy estate and remands the case back to the Bankruptcy Court for further proceedings not inconsistent with this decision.

**IT IS SO ORDERED.**